UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 00-4751
(CR-99-87-BR)

United States of America,

Plaintiff - Appellant,

versus

Anthena Poisson Nichols, etc.,

Defendant - Appellee.

O R D E R

The court amends its opinion filed July 23, 2001, as follows:

On page 2, second full paragraph of text, line 4 -- "Mr. & Mrs. Watson's only role" is corrected to read "Mr. & Mrs. Watkins' only role . . . ."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

ATHENA POISSON NICHOLS, a/k/a Tina
P. Nelson,
Defendant-Appellee.

No. 00-4751

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
W. Earl Britt, Senior District Judge.
(CR-99-87-BR)

Argued: April 6, 2001

Decided: July 23, 2001

Before LUTTIG and GREGORY, Circuit Judges, and
Rebecca B. SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Vacated and remanded by unpublished opinion. Judge Gregory wrote
the opinion, in which Judge Luttig and Judge Smith joined.

_____

COUNSEL

**ARGUED:** J. Gaston B. Williams, Assistant United States Attorney,
Raleigh, North Carolina, for Appellant. Stephen Clayton Gordon,
Assistant Federal Public Defender, Raleigh, North Carolina, for
Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attor-

ney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellant. Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

GREGORY, Circuit Judge:

The United States appeals a district court order granting the motion for judgment of acquittal filed by Athena Poisson Nichols, a/k/a Tina P. Nelson ("Nichols"), after a jury convicted Nichols of bank fraud under 18 U.S.C. § 1344. Finding that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we vacate and remand for further proceedings.

I.

In 1986, Nichols, her husband, and Mr. and Mrs. Thurston Watkins III formed the Crossroads Partnership ("the Partnership") to construct and lease the Crossroads Center in Wilmington, North Carolina.[1] Mr. and Mrs. Watkins' only role in the partnership was the acquisition of land necessary for the Crossroads Center. As the Partnership's managing partner, Nichols had sole responsibility for collecting debts, disbursements, and day-to-day financial operations. Nichols was the sole signator on the bank account held by the Partnership. Nichols' husband oversaw construction.

The Partnership hired Raysand Building Corporation ("Raysand")

_____

[1] In accordance with the standard required for review of a motion for judgment of acquittal, the evidence from trial is characterized in the light most favorable to the Government. <u>United States v. Wilson</u>, 118 F.3d 228, 234 (4th Cir. 1997).

2

to build the Crossroads Center. Carolina Savings Bank ("Carolina Savings") financed the Crossroads Center project through a $1.8 million construction loan. Carolina Savings incrementally disbursed loan proceeds, in conjunction with its inspection of completed work.

Between October 1998 and November 27, 1999, Carolina Savings disbursed 19 checks written to the Partnership and Raysand as co-payees. Carolina Savings' director of lending testified that the bank typically required two endorsements on construction loan disbursement checks to ensure that contractors were paid and that both contractors and developers were aware of all disbursements made. Nichols deposited the first 14 of these checks into the Partnership's account at First Hanover Bank ("First Hanover") only after acquiring Raysand's co-endorsement and writing a check to Raysand for outstanding bills intended to be covered by the relevant Carolina Savings disbursement. Nichols deposited the last five checks in the Partnership's account at First Hanover without securing Raysand's co-endorsement and without writing checks to Raysand for outstanding bills. The five checks totaled $108,412.32.

Between May 4, 1989 until at least October 31, 1989 -- approximately the same period of time that Nichols deposited the five checks without Raysand's endorsement -- the Partnership did not pay Raysand for any outstanding bills. Raysand sent the Partnership at least three invoices reflecting both serious past due amounts and new invoice amounts during this time period: a May 4, 1989 invoice noting a "[d]ue previous invoice" amount of $129,200; a July 21, 1989 invoice noting "[d]ue OLD Invoices $146,150.00"; and an October 31, 1989 invoice noting "[d]ue previous invoice $155,900." Raysand's owner testified that Nichols postponed and avoided meetings with him once the Partnership's payments began to lag.

The loan agreement entered into by the Partnership and Carolina Savings required Nichols, as managing partner, to notify Carolina Savings whenever the Partnership received any notice of nonpayment. Specifically, the loan agreement stated as follows:

> Notice of Non-Payment: Borrower will immediately advise Lender if Borrower receives any notice, written or oral, from the general contractor or any subcontractor, laborer or

3

> material supplier to the effect that such general contractor, subcontractor laborer or material supplier has not been paid for services, labor or materials furnished in connection with the project[.]

J.A. 428. Nichols, though, did not notify Carolina Savings of Raysand's past due bills.

Nichols' office manager, Vicki Mills, testified that she worked for Nichols and her husband between December of 1986 and August 1989. Mills testified that she wrote most of the checks connected with the Crossroads Center, but that Nichols also wrote some. Mills testified that Nichols made personal payments from the Crossroads Center account at First Hanover, including payments for a truck, to a hair dresser, and an interior designer.

On November 23, 1999, a grand jury indicted Nichols for bank fraud under 18 U.S.C. § 1344. The indictment charged Nichols with

> knowingly execut[ing] and devis[ing] and attempt[ing] to execute and devise a scheme and artifice to defraud, and obtain the monies, funds, and credits of Carolina Savings Bank . . . by diverting money obtained through incremental construction draws in a manner not provided for by the loan agreement. Some draws being made on a 1.8 million dollar construction loan were deposited without the proper endorsement of the co-payee at a time in which the debts of the defendant had not been satisfied as required under the loan agreement.

Specifically, the indictment charged Nichols with executing the scheme by "depositing a check for $31,940 into an account, under her control, without the endorsement of the co-payee, Raysand Construction, and using the funds in a manner other than those required by the loan agreement with Carolina Savings Bank."

On July 7, 2000, a jury convicted Nichols of bank fraud. Nichols moved for judgment of acquittal, which the district court granted on September 18, 2000. The district court explained that the evidence

4

presented at trial was insufficient to establish that Nichols misrepresented or concealed a material fact. The court directed its inquiry at evidence that Nichols deposited five checks without co-endorsements:

> Defendant only endorsed on behalf of Crossroads, which she had the authority to do. . . . The checks at issue were clearly on their face made payable to Crossroads and Raysand, yet First Hanover Bank accepted the checks for deposit . . . . Likewise, . . . Carolina Savings Bank . . . did not return the checks for lack of endorsement. Depositing a check into a checking account and presenting it for payment, without more, even if defendant was not entitled to the funds, does not involve any representation. . . . Furthermore, even if defendant made some representation, it was not false or material. If any representation at all, she was merely representing that she could obtain the funds on behalf of Crossroads, which of course was true.

United States v. Athena Poisson Nichols, No. 7:99-CR-87-1-BR, Order (E.D. N.C. Sept. 18, 2000).

II.

This Court reviews de novo a district court's grant of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the Government. United States v. Wilson, 118 F.3d at 234. If "substantial evidence" exists to support the jury's verdict, the judgment of acquittal must be vacated and the jury's verdict reinstated. See Glasser v. United States, 315 U.S. 60, 80 (1942).

III.

Section 1344 of Title 18 provides in pertinent part that "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice -- (1) to defraud a financial institution; . . . shall be fined not more than $1,000,000 or imprisoned for not more than 30 years, or both." To obtain a guilty verdict, the Government was required to show that Nichols attempted to defraud Carolina Savings through a misrepresentation or concealment. United States v. Colton, 231 F.3d 890, 907

5

(4th Cir. 2000) ("The gist of the action is fraudulently producing a false impression upon the mind of the other party, and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff"). If a concealment, the Government was required to present evidence establishing that Nichols took "`active or elaborate steps to conceal' information" from Carolina Savings. Id. at 901 (quoting Reynolds v. East Dyer Dev. Co., 882 F.2d 1249, 1253 (7th Cir. 1989)).

We explained in Colton that, to establish concealment, the Government was required to do more than establish a mere nondisclosure.[2] Rather,

> the common law clearly distinguishes between concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. The latter is characterized by mere silence. Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does.

Id. at 899. The alleged concealment "must have been intentional and effective -- the hiding of a material fact with the attained object of creating or continuing a false impression as to that fact." Id. (citing Fox v. Kane-Miller Corp., 542 F.2d 915, 918 (4th Cir. 1976)).

The Government met its burden. Not only did Nichols deposit two-party checks without proper endorsements, but she, at the same time, failed to notify Carolina Savings of the past due bills the Partnership

---

[2] We note that the district court granted the motion for judgment of acquittal before we issued our opinion in United States v. Colton, 231 F.3d 890 (4th Cir. 2000), in which we clarified that 18 U.S.C. § 1344 is to be read broadly. The district court did not have the benefit of this court's decision in Colton, and the standard enunciated therein, when it first decided the motion for judgment of acquittal in this case.

had received from Raysand. Under the terms of the loan agreement between the Partnership and Carolina Savings, Nichols had an affirmative duty to provide this information to Carolina Savings. The Government introduced sufficient evidence to allow the jury to infer that Nichols concealed this information from Carolina Savings so as not to arouse any inquiry into the checks she improperly deposited without Raysand's endorsement. In addition, the Government introduced sufficient evidence to allow the jury to infer that Nichols avoided contact with Raysand so as to prevent Raysand from learning that Carolina Savings issued five checks that Nichols deposited without Raysand's endorsement. Such conduct constitutes "deceptive act[s] or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." See Colton, 231 F.3d at 901. Accordingly, viewing the evidence in the light most favorable to the Government, we conclude that substantial evidence exists to support the jury's verdict. Thus, the district court erred by granting Nichols' motion for judgment of acquittal.

IV.

For the foregoing reasons, the judgment of the district court is vacated and the jury's verdict is reinstated. We remand the case for further proceedings regarding sentencing.

VACATED AND REMANDED

7